UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TERENCE HOLLOWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:06CV1235-CDP |
| | ) | |
| CORRECTIONAL MEDICAL SERVICES, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

Terence Holloway, a Missouri prisoner, brings this suit challenging his custodians' refusal to give him Interferon therapy for his Hepatitis C. His *pro se* complaint alleges that prison officials will not provide him with this particular therapy because he is a former drug user. I previously dismissed some of his claims as frivolous under 28 U.S.C. § 1915A. The remaining claims are against Correctional Medical Services (CMS) under Title II of the Americans with Disabilities Act (ADA), and against the remaining individual defendants under 42 U.S.C. § 1983. Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6), asserting that Holloway failed to exhaust the prison administrative grievance system as required by the Prison Litigation Reform Act. Under recent

Supreme Court precedent, however, Holloway has sufficiently exhausted, so I will deny the motion to dismiss.

**I. Background**

Plaintiff Terence Holloway is an inmate in the Missouri Department of Corrections (MDOC). Defendant CMS provides medical care to inmates under a contract with MDOC. Defendants Conley, Babich, Cox, Cofield, Williams, Wollberg, and Young are medical staff working in the Missouri Department of Corrections. Babich is a licensed physician working at Southeast Correctional Center and Cox, Williams, Wollberg, and Young are medical staff working at Missouri Eastern Correctional Center, where plaintiff was housed at the time he filed suit. Cofield is a registered nurse working at the Missouri Regional Office for CMS and Conley is the Statewide Medical Director for CMS.

Holloway filed this suit in August of 2006, seeking declaratory and monetary relief. He alleges that the individual defendants were deliberately indifferent to his serious medical needs when they refused to provide him Interferon treatment for his Hepatitis C. Additionally, Holloway alleges that CMS violated the ADA when it denied Interferon treatment based solely on his past history of drug abuse despite the fact that he had completed a rehabilitation program before entering prison.

Although Holloway alleged in his complaint that he complied with the prison grievance system, defendants argue that the case should be dismissed because Holloway (1) did not name each defendant in his grievances; (2) did not specify that he was claiming a violation of the ADA in the grievances; and (3) filed the grievances too late.

Holloway filed his Informal Resolution Request (IRR) on December 6, 2005. In his IRR, Holloway stated his complaint as denial of adequate medical attention (refusal of Interferon therapy and other treatment) and denial of information (not provided with policies regarding treatment of Hepatitis C). On December 19, 2005, defendant Wollberg responded to Holloway's IRR, stating that she met with Holloway on December 19, 2005 and that his grievance had not been resolved. On December 29, 2005, Holloway filed a grievance reissuing his request for information and treatment. On January 27, 2006, defendant Young responded to Holloway's grievance. Not satisfied with the response up to that point, Holloway filed a Grievance Appeal on February 8, 2006, again requesting information on his treatment, specifically the policy for inmates with a history of drug and alcohol usage. On May 26, 2006, defendant Cofield responded to Holloway, denying his appeal.

## II. Discussion

A defendant may move to dismiss a claim "for failure to state a claim upon which relief may be granted" under Rule 12(b)(6), Fed. R. Civ. P. The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim entitling him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Young v. City of St. Charles, Mo., 244 F.3d 623, 627 (8th Cir. 2001). When considering a motion under Rule 12(b)(6), the court must assume the factual allegations of a complaint are true and must construe those allegations in favor of the plaintiff. Neitzke v. Williams, 490 U.S. 319, 326 (1989).

The Prison Litigation Reform Act (PLRA), 42 U.S.C. §1997e(a) requires a prisoner to exhaust administrative remedies before filing suit: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Congress's goal in enacting this statute was "to reduce the quantity and improve the quality of prisoner suits" by affording prison officials time to resolve the complaints internally before going to federal court. Porter v.

Nussle, 534 U.S. 516, 524-25 (2002). Administrative remedies could eliminate the need for further litigation, weed out frivolous claims, or, at the least, create an administrative record for use in court. Id. at 525. "Even when the prisoner seeks relief not available in grievance proceedings, notably monetary damages, exhaustion is a prerequisite to suit." Id. at 525. (citing Booth v. Churner, 532 U.S. 731, 741 (2001)).

The Supreme Court recently held that exhaustion under the PLRA is defined by the prison's grievance procedures, not by the text of the PLRA itself. Jones v. Bock, 127 S.Ct. 910, 922 (2007). Specifically, the Court overturned Sixth Circuit precedent that automatically dismissed for a plaintiff's failure to name defendants in the grievance procedure, finding that "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances." Id. at 922-23. The sufficiency of exhaustion is determined by looking to the prison's procedural rules governing the naming of individuals during the grievance procedure. Id. The Court found that the exhaustion requirement, while intended to alert prison officials to a problem, is not intended "to provide personal notice to a particular official that he may be sued." Id. at 923. The Supreme Court in Jones also held that a case should not be dismissed in its entirety if it contains one or more unexhausted claims. Id. at 924-25. The exhausted claims should proceed,

and the unexhausted claims dismissed. Id. Before this decision, the Eighth Circuit, like the Sixth, required dismissal of the entire case if any claims were not exhausted. See Graves v. Norris, 218 F.3d 884, 885-86 (8th Cir. 2000) (per curiam). In McDowell v. Dawson, No. 06-1485, 2007 WL 623776, *1 (8th Cir. Mar. 2, 2007), the court recognized that Jones overruled the prior Eighth Circuit rule that dismissal of an entire claim was required when the prisoner failed to exhaust any part of the claim.

In light of the Supreme Court's holding in Jones, this court must look to the MDOC guidelines to determine whether Holloway has properly exhausted his administrative remedies. Defendants have suggested three separate reasons they claim Holloway did not properly exhaust: failing to specify each defendant, failing to cite the ADA, and untimeliness.

The MDOC grievance process provides that a prisoner must first file an Informal Resolution Request (IRR) within fifteen days of the alleged incident. The IRR must state the subject of the complaint, and the prisoner is to provide whatever information and material is available to him. A response from prison officials is due within 40 calender days. If the inmate is unsatisfied with the IRR response, he may file an Offender Grievance within seven calendar days of receipt of the IRR response. Another response from the prison is due forty days later. If

the inmate wishes to appeal the grievance response, he may file an Inmate Grievance Appeal within seven calender days of the response. After receiving a response to his appeal, the inmate has exhausted the grievance process.

### a. Failure to specifically name defendants

Nothing in the MDOC grievance procedures requires that a prisoner specifically name the prison officials against whom the grievance is filed. Defendants argue that the grievance procedure requires Holloway to specifically name individuals if he is aware of their names or if their names were available to him at the time he filed his IRR. In support of this argument, defendants point to the provision that "the offender should provide whatever material/information is available to her/him." This is essentially the same argument that the Supreme court rejected in <u>Jones</u>.

In <u>Jones v. Bock</u>, the prison grievance policy in question "did not contain any provision specifying who must be named in the grievance." 127 S.Ct. 910, 922. The policy did, however, ask that the prisoner "be as specific as possible" in the grievance. <u>Id</u>. In addition, the person required to respond to a grievance in <u>Jones</u> was not necessarily the alleged culpable prison official, but rather an administrative official assigned the response. <u>Id</u>. The Court held that these guidelines did not require a prisoner to name defendants, despite the demand of

specificity. Id. Similar to the procedure in Jones, MDOC's prison grievance procedure does not contain a provision specifically requiring a prisoner to identify the culpable parties, yet it also asks the prisoner to "provide whatever material/information is available to her/him."

This conclusion is supported by the purpose of the PLRA, as clarified by the Supreme Court in Jones v. Bock. Among the primary benefits of the exhaustion requirement are allowing a prison to address complaints before being subjected to suit, reducing litigation if these complaints can be resolved internally, and improving the quality of the litigation that may ensue by creating a record. Jones v. Bock, 127 S.Ct. at 923. (citing Woodford v. Ngo, 126 S.Ct. 2378, (slip op., at 5) (2006)). While a primary concern of the PLRA is alerting prison officials to a problem, this is not to be confused with providing personal notice to a particular official that he may be sued. Id. (citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004)). "The grievance is not a summons and complaint that initiates adversarial litigation." Johnson, 385 F.3d at 522. Even though he knew the names of defendants Conley, Williams, Cox, Wollberg, Young, and Cofield, Holloway was not required by MDOC grievance procedure to provide their names in his IRR, Grievance or Grievance Appeal, nor does such a requirement fit with the primary purposes of the PLRA. See Reynolds v. Crawford, 2:06CV9ERW,

2007 WL 586800 (E.D. Mo. Feb. 21, 2007); Harris v. Kempker, 1:05CV217CAS, 2007 WL 494973 (E.D. Mo. Feb. 21, 2007).

### b. Failure to state ADA claim

Defendant CMS alleges that Holloway's failure to specify the nature of his claim as an ADA claim in the grievance procedure constitutes failure to exhaust administrative remedies under the PLRA. In Jones, the Court found that the PLRA was primarily designed to "alert prison officials to the problem" before a federal suit could be filed. Jones v. Bock, 127 S.Ct. at 923 (citing Johnson v. Johnson, 385 F.3d at 522). Just as PLRA itself does not require a prisoner to specifically name defendants, it does not require that a prisoner specifically label his claims – unless MDOC's grievance procedures demand it.

Nothing in the MDOC prison grievance procedures requires a prisoner to specifically allege that a particular claim is being made under the ADA. In fact, it would probably be unreasonable to expect a prisoner to know the exact contours of all possible federal statutes and to name each one in a grievance. The MDOC guidelines implicitly recognize this unreasonableness, and place the burden on the prison officials to determine if the ADA is implicated: "if a review of the complaint reveals the situation/complaint is related to the Americans with Disabilities Act, the classification staff/grievance staff will consult with the

Americans with Disabilities Act site coordinator . . ..″ The guidelines also leave room for the ADA issue to be determined during the second step of the grievance process, after the IRR has been reviewed and replied to. After receiving a response to an IRR, the prisoner files a grievance. After receiving this grievance the procedures require that the reviewing prison official determine whether the issue is an ADA issue, and if so to consult with the ADA site coordinator. The guidelines make it the job of the prison staff reviewing the complaint, not the prisoner, to identify a complaint as a potential ADA issue.

Further, Holloway alleges that he made numerous attempts to alert prison officials to the nature of his claim, and was repeatedly told that his claim did not qualify under the ADA. Holloway also claims to have amended his Grievance Appeal with specific information alleging an ADA violation. Holloway's grievance and the other documents he filed with the prison authorities satisfied the PLRA's purpose of alerting prison officials to the problem, and I find that Holloway has sufficiently exhausted administrative remedies as to this claim.

**c. Failure to file IRR in timely manner**

Several of the defendants argue that Holloway failed to timely complain of their actions, thus failing to exhaust administrative remedies. In support of this allegation, defendants point to the provision of MDOC's grievance procedure

requiring the prisoner to file his IRR "within 15 calendar days from the date of the alleged incident." Assuming the factual allegations of Holloway's complaint are true, and construing those allegations in favor of Holloway, I find that Holloway has exhausted administrative remedies as to these claims.

Defendants cite Woodford v. Ngo, 126 S.Ct. 2378 (2006), to support their claim that Holloway's failure to file his IRR within fifteen days of Babich's denial of treatment constitutes failure to exhaust. In Woodford, the Supreme Court held that a prisoner must comply with administrative deadlines as a prerequisite to bringing suit in federal court. 126 S.Ct. at 2386. The Court in Woodford was oncerned, however, with prisoners who "bypass deliberately the administrative process by flouting the agency's procedural rules." Id. at 2388. The Court gives the example of "a prisoner wishing to bypass available administrative remedies" who "could simply file a late grievance without providing any reason for failing to file on time." Id. The Court was concerned that the prisoner could proceed directly to federal court if the prison rejects the grievance as untimely, thus circumventing the administrative procedures altogether. Id. That is not a comparable situation to the present case. Here, Holloway filed his suit only after numerous attempts to resolve the conflict internally.

In his IRR, Holloway claims that he has been denied adequate medical

attention and reasonable information regarding his Hepatitis treatment. Babich denied Holloway Interferon treatment in 2003, a denial that was renewed by other medical staff at various prison facilities. Holloway claims that he filed his IRR more than fifteen days after his consultation with Babich because of the lack of response to his requests to be reassigned to a different unit. I find that what Holloway alleged in his IRR was the continual denial of information and treatment by Babich and the other medical staff. Since this denial continued to occur at the time he filed his IRR and thereafter, Holloway has sufficiently exhausted his administrative remedies.

### III. Plaintiff's Request for Default

Plaintiff requested that the Clerk enter default as to certain defendants, and the Clerk denied that request on April 27, 2007. Plaintiff has now filed a motion to reconsider. The Court file reflects that one group of defendants filed both answers and motions to dismiss on January 4, 2007, and that the other group of defendants requested, and were granted, additional time to respond to the complaint. That group filed their own answer within the extension granted, and no defendants are in default.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss [#14] is

DENIED.

**IT IS FURTHER ORDERED** that plaintiff's motion to reconsider denial of default [#33] is denied.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 11th day of May, 2007.